[Cite as *Milestone Invest. Ents., Inc. v. Mt. Vernon Fire Ins., Co.*, 2019-Ohio-2732.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MILESTONE INVESTMENT ENTERPRISES, INC. | JUDGES:<br>Hon. William B. Hoffman, P.J<br>Hon. Craig R. Baldwin, J.<br>Hon. Earle E. Wise, Jr., J. |
| Plaintiff-Appellant | |
| -vs- | Case No. 18CA122 |
| MOUNT VERNON FIRE INSURANCE CO., et al. | |
| | O P I N IO N |
| Defendant-Appellee | |

CHARACTER OF PROCEEDINGS:     Appeal from the Richland County Court of
                              Common Pleas, Case No. 17-CV-610 D

JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       July 1, 2019

APPEARANCES:

For Plaintiff-Appellant                For Defendant-Appellee

J. JEFFREY HECK                        LORREE L. DENDIS
The Heck Law Offices, Ltd.             Williams & Petro Co., LLC
One Marion Avenue, Suite 215           338 S. High Street, 2nd Floor
Mansfield, Ohio  44903                 Columbus, Ohio  43215

*Hoffman, P.J.*

**{¶1}** Appellant Milestone Investment Enterprises, Inc. appeals the summary judgment entered by the Richland County Common Pleas Court dismissing its claims for breach of contract, bad faith, negligence, and breach of fiduciary duty against Appellee Mount Vernon Fire Insurance Co.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** At some point prior to 2012, Appellant acquired a three-story commercial building with six storefronts in Mansfield, Ohio. Appellant is owned by John Dilts, an attorney, and Eric Johnson, who owns a pawn shop. When Appellant refinanced the property with First Merit Bank, the bank required Appellant to obtain property insurance.

**{¶3}** Because of the age of the building and the fact the second and third stories were gutted, the property was not eligible for a conventional policy. Appellant's insurance agent, Dumbaugh Insurance Agency, asked for help form the Ohio Insurance Exchange to obtain suitable coverage for Appellant's building. The Ohio Insurance Exchange referred Dumbaugh to a wholesale insurance broker, Morstan General Insurance Agency.

**{¶4}** Morstan obtained coverage for Appellant from Appellee effective August 16, 2012. However, a condition of the policy was Appellee would have the property inspected in order to inform Appellant of any repairs necessary to keep the policy's coverage in place. The property was later inspected by Lynne Miller, an independent contractor.

**{¶5}** Based on the inspection, Appellee sent an email to Appellant and the insurance agents on October 15, 2012, which stated, in pertinent part:

A recently conducted inspection has developed the following mandatory recommendations:

- Install functioning and operational ABC type fire extinguishers, full charged and tagged in all units. Fire extinguishers must be mounted at a height between 39 & 42 inches from the floor to be made available in case of an emergency.

- A three foot clearance must be maintained between storage and the electrical panel in the basement of area of Rocky's Pub & Grill.

- Open junction boxes and exposed electrical wiring was visible throughout the basement storage area of the jewelry store. In addition, wiring relics were left over from previous electrical installations. Obtain the services of a licensed and insured electrical contractor to remove the old wiring and install proper junction boxes.

- A structural engineer must be hired to inspect the balconies on the second and third floor levels and the fire escapes in the rear of the building to ensure they can be used safely.

- **The second and third floors have begun renovations resulting in the removal of walls. Unprotected vertical openings must be protected in accordance with NFPA 101 29.3, 8.6 (The first floor exit leading to the outside exit). The stairway leading from the second floor to the third floor must be protected by an [sic] one hour fire**

**resistant barrier with one hour fire rated doors. In addition, any openings in the floor must be closed to prevent rapid fire spread throughout the combustible construction. The stairwell is open through the floors on all sides.**

- The trash dumpster must be maintained at least 35 feet from the building.

- Obtain certificates of general liability insurance from all commercial tenants leasing space within your building. These certificates must be obtained when the tenant moves in and on a yearly basis thereafter.

- Please comply with the recommendations and confirm in writing by signing and returning this form within 45 days to avoid cancellation of your policy. (Emphasis added).

{¶6} After negotiation, Appellee relented on the fourth and sixth bullet points. John Dilts was concerned complying with bullet point five, quoted in bold above, would be expensive. Consequently, Appellant, through Morstan, asked Appellee for clarification of the fifth bullet point:

Bullet 5 "The second and third floors have begun renovations…" 1) Clarification of unprotected vertical openings 2) Stairway protection from

2nd to 3rd floor barrier?   Is that the fire resistive door? 3) Where are the openings in the floor?  4) The stairwell is open?

{¶7}    The request was forwarded to Lynne Miller, and she responded by email on November 5, 2012, as follows:

I will try to make this more clear, but it was so dark up there on the second floor that when I dropped the lens cap for the camera we had to go get a flashlight to search for it.

There are two stories that they began to renovate, the second and third floors.  These are gutted.  Due to the economy these two floor [sic] remain unfinished.

There is no heat, electric, or plumbing on these two floors, therefore no lighting.

There is a staircase leading up to the second floor that has entrance through a private door through a key located in the front of the buildings. This is open at the top to the entire second floor.  There is no door at the top of the stairs.  It just opens up to the entire second floor.

The unprotected vertical openings refers to the stairs between the 2nd and third floors which are wide open, no walls, doors, not even backs to the steps, anything.  These cannot even be considered as real pedestrian stairs as it takes very large steps to go up them, like a foot tall each step.  It was like climbing a ladder.  These are open on the sides.  There are no fire

doors or any doors.  They lead to the third floor also wide open no door or walls.

There are also holes in the floors – open to the space below.  This is not seen from the first floor as there are drop ceilings.

I hope this helps a little.  Perhaps better photos would have helped.

**{¶8}**    Discussions continued between Appellant, Dumbaugh, Morstan, and the Ohio Insurance Exchange concerning what Appellant needed to do to comply with Bullet Point 5.  On November 29, 2012, Dumbaugh expressed concern to the Ohio Insurance Exchange via email as follows:

I was concerned because the 45 days is up 12-01-12.  I am assuming we will have some additional time since we are still working things out.  Please let me know if I should send any kind of response at this time in regards to the items the insured has taken care of…

**{¶9}**    Tami Washington responded on behalf of the Ohio Insurance Exchange:

I will make certain my underwriter is aware.  The company is the delay in responding so…they will need to work with us.  I apologize this has been such a pickle.  Thanks for your patience…

{¶10} However, Appellant took no action to make repairs to attempt to comply with Bullet Point 5, choosing to wait for clarification. On January 2, 2013, Appellee mailed a notice of cancellation of the policy to Appellant and Morstan. The notice stated it was effective February 3, 2013, and the reason for the cancellation was Appellant's failure to make the mandatory repairs specified after the inspection. On April 9, 2013, Morstan issued a premium refund of $1,157.10 to the Ohio Insurance Exchange, which delayed passing the refund to Appellant until August 7, 2013.

{¶11} On August 12, 2013, which was four days before the expiration date of the original policy, a fire damaged a portion of Appellant's building. Appellant demanded payment from Appellee. Appellee responded that the policy had been cancelled prior to the fire.

{¶12} Appellant filed the instant action against Appellee, the Dumbaugh Insurance Agency, Inc., and Mark Dumbaugh. Appellant voluntarily dismissed Mark Dumbaugh personally from the action. Appellee filed a motion for summary judgment. The trial court granted Appellee's motion for summary judgment, finding the policy cancellation issued January 2, 2013, and effective February 3, 2013, to be valid.

{¶13} Appellant filed a notice of appeal to this Court (Case No. 18CA75). We dismissed the appeal for want of a final, appealable order, as the Dumbaugh Insurance Agency, Inc. remained a party to the action and the entry did not include Civ. R. 54(B) language. Appellant subsequently dismissed the Dumbaugh Insurance Agency from the action, rending the summary judgment in favor of Appellee a final, appealable order.

{¶14} It is from the July 23, 2018, summary judgment of the Richland County Common Pleas Court Appellant prosecutes this appeal, assigning as error:

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEE.

{¶15} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 36 (1987). As such, we must refer to Civ. R. 56(C) which provides in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶16} Ohio Civ. R. 56 Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving

for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 1997-Ohio-259, *citing Dresher v. Burt*, 75 Ohio St.3d 280, 1996-Ohio-107.

**{¶17}** Appellant first argues the court erred in granting summary judgment to Appellee because Appellee failed to provide the requested clarification of Bullet Point 5 prior to cancelling the contract.

**{¶18}** The insurance contract between the parties provides as follows:

**Cancellation**

The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

10 days before the effective date of cancellation if we cancel for nonpayment of premium

30 days before the effective date of cancellation if we cancel for any other reason.

We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**{¶19}** Policy No. CF 2554691, Common Police Conditions, Cancellation, IL 00 17 11 98, p. 1.

**{¶20}** There is no evidence Appellee violated these provisions in cancelling the contract, and Appellant does not argue Appellee failed to comply with these provisions.

**{¶21}** Rather, Appellant argues Appellee breached the contract and acted in bad faith by failing to provide the requested clarification regarding what action needed to be taken by Appellant to comply with Bullet Point 5 of the inspection report.

**{¶22}** Appellant first argues Appellee's duty to provide such clarification arises from R.C. 3932.26(B)(6), which provides in pertinent part:

(B) After a policy of commercial property insurance, commercial fire insurance, or commercial casualty insurance other than fidelity or surety bonds, medical malpractice insurance, and automobile insurance as

defined in section 3937.30 of the Revised Code, has been in effect for more than ninety days, a notice of cancellation for such policy shall not be issued by any licensed insurer unless it is based on one of the following grounds:

(6) Failure of an insured to correct material violations of safety codes or to comply with reasonable written loss control recommendations[.]

**{¶23}** Appellant argues Appellee could not cancel the policy for its failure to comply with the written loss control recommendations because Bullet Point 5 was not reasonable. Appellant points to evidence in the record demonstrating Appellant did not understand what it needed to do to comply with Bullet Point 5, and Appellee failed to provide requested clarification of this point.

**{¶24}** Appellant cites no authority for its proposition that to be reasonable, the recommendations must be subjectively understood by the insured, nor does it provide any authority for the proposition the insured must provide detailed instructions on how to correct the condition leading to the written loss control recommendation. If the legislature intended "written loss control recommendations" to have effect only when clearly understood by the insured, it could have written the statute that way. However, as written in R.C. 3937.26(B)(6), we find the word "reasonable" modifies "written loss control recommendations," not the failure of the insured to comply with such recommendations. Appellant's argument calls into question the reasonableness of its failure to comply with the loss control recommendation in a timely fashion, rather than the reasonableness of the loss control recommendation itself.

**{¶25}** Appellant also argues the cancellation violated Appellee's internal policy regarding cancellation. The Cancellation/Reinstatement Guidelines of USLIC provides in pertinent part:

When reviewing the request to issue a notice of cancellation, we need to verify the following:

The reason on the request – reason needs to comply with the statute regulations and the policy language. Make sure the reason is clear and understandable. If the reason is unclear refer back to underwriting for clarification or review with your leader.

**{¶26}** We find this internal company guideline refers not to the notice of cancellation provided to the insured, but to the internal request to issue a notice of cancellation to the insured. The guideline is directed to the internal communications in the company regarding a request to issue a notice of cancellation, and does not direct the reason to be clear and understandable to the insured in the notice of cancellation.

**{¶27}** Nothing in this internal policy creates a duty to the insured separate and apart from the requirements of the contract between the parties and the statutory requirements.

**{¶28}** Finally, Appellant argues Appellee is vicariously liable for the actions of its agent, Morstan. Appellant argues Morstan did not respond to communications requesting clarification of Bullet Point 5 in a timely manner, thus leading to the cancellation of the policy.

{¶29} As discussed earlier in this opinion, Appellee did not breach the contract or violate the statute in cancelling the contract. Even if Morstan did not communicate between Appellant and Appellee in a timely fashion, Appellant failed to take any steps to correct the condition or to seek additional time to comply, even after issuance of the Notice of Cancellation. The failure of Appellant to correct the condition caused the cancellation of the contract, not any failure or delay in communication by Morstan. We find the trial court did not err in granting summary judgment, as Appellee was entitled to judgment as a matter of law.

{¶30} The assignment of error is overruled.

{¶31} The judgment of the Richland County Common Pleas Court is affirmed.


By: Hoffman, P.J.

Baldwin, J. and

Wise, Earle, J. concur